Hi. It was not a court for divisions. Now it's special. I don't know. Justice David R. Thank you. That's great. Hey, one, two, four, two, one, eight, four people versus Eddie. Good morning, everybody. Just to set the lay of the land, both sides will be allowed 20 minutes for argument. And in addition, the appellant will be allowed five minutes for rebuttal. So you don't have to reserve time for rebuttal. We'll try and keep this time tight. It went a little over. Early morning arguments. When you step up, if you could please tell us your name and remember that while these microphones do an excellent job of recording, they don't necessarily amplify your voice. Just keep that in mind. Counsel for the appellant, you may proceed. May it please the Court. My name is John Burfell. I represent Eddie Hill on appeal from his 30-year sentence. This is a straightforward predisposition case where the trial court was predisposed to impose a certain sentence. It promised to impose that sentence before sentencing, and then it followed through on that promise. Now, the procedural facts of this case are long and tortured, but the salient facts are not. In 2022, Mr. Hill was sentenced to 37 years in prison for two counts of attempt murder. He appealed that sentence arguing it was excessive and that it exceeded the 30 years that he could have received under the specific facts of this case. In other words, the sentence exceeded the sentencing cap for his exposure. How is it a sentencing cap? I mean, it was based on the ineffective assistance of counsel he got at the 402 conference, but you're saying it's a sentencing cap, the 30 years? I believe for two reasons. One, it's the law of the case. In the last appellate's decision, this Court wrote that the maximum sentence that could have been imposed under the Constitution was 30 years because that was what he understood the maximum to be when he rejected the 20-year sentence that was offered. Right. Based on the court, the judge found ineffective assistance of counsel at the 402 conference. So that's where the 30 years, right? Because his counsel told him then the cap, the max, was 30 years. Correct. Okay. So how is it a sentencing cap, specifically? So when this Court re-mandated for resentencing, it instructed the Court, this Court instructed the trial court to impose, and I'll quote directly from this Court's opinion, it said, So the plain language of the mandate from this Court was to impose a sentence not exceeding 30 years. That is, I think by definition, a sentencing cap. The problem comes when this case went back. And it did go back for resentencing, and everybody understood it went back for resentencing. In fact, during the second hearing on remand, the Court turned to Mr. Hill and said, And Mr. Hill responded, yes, sir. The Court then appointed counsel. A couple months later, counsel filed a motion to clarify the sentencing range for each individual count. And in that motion, counsel argued that the maximum sentence for each count had to be 15 years because the counts had to run consecutively to each other. So two consecutive 15-year sentences would result in a maximum 30-year sentence. Judge Gamboni said, and I'm going to quote here, I'm not going to rule on it. I'm going to sentence him to not more than 30 years. And I think we talked off the record, and I told you I'm not going to go below 30. He manifested a clear intent to impose a 30-year sentence. And counsel, at that hearing, the new resentencing hearing, did counsel say anything to note any disagreement with that at that point?   Defense counsel is given an opportunity to present anything in mitigation that they wanted to. Correct, Your Honor. And given an opportunity to, even the defendant is given an opportunity to allocute. Correct, Your Honor. If you wanted to. That is correct, Your Honor. Okay. And the new evidence that's presented at the second resentencing hearing is the continued good behavior, that's at least the new mitigating evidence that's presented, is the continued good behavior of Mr. Hill further establishing that he was, in fact, rehabilitated, which is what everybody had hoped for, and I assume what Judge Lacey believed would happen when he originally offered the 20-year sentence that Mr. Hill rejected. So the 30-year sentence is imposed because it was promised, and counsel moves to reconsider, arguing that the 30-year sentence didn't adequately consider all the evidence in mitigation, and that, in essence, the court just imposed the maximum sentence. And at the hearing on counsel's motion to reconsider the sentence, the court explains, in essence, why it imposed a 30-year sentence. And I'm paraphrasing here, but Judge Gamboni says, you know, I gave a lot of thoughts to this prior sentence. I gave what I thought was a fair sentence of 37 years. The appellate court didn't think very much of it, so here we are. And that's the context in which he imposed a 30-year sentence. He, in essence, told everybody that he imposed the maximum sentence he could because he thought his 37-year sentence was fair, and obviously he could no longer impose that under the mandate of this court. But in fact, when he had this sentencing hearing, then he went on to comment about Mr. Hill's conduct in the Illinois Department of Corrections, right? He did, Your Honor. And noted that favorably, that Mr. Hill had made steps or made progress over the years? He had, yes. Okay. But this case is pretty much on all fours identical to People v. Morris. And that's another case where the trial court predetermined the defendant's sentence on remand for resentencing. And what we have here is the same. It's the sentence was imposed. It was vacated. The trial court was upset by the fact that it was vacated and was preoccupied with approximating the prior sentence that was imposed. But does that in and of itself mean that it was improper, that he imposed the maximum sentence that he could get in this case, that Judge Gamboni did this? It would have been possible for Judge Gamboni to impose the maximum sentence had he gone to sentencing with an open mind. But his comments before sentencing established that he had predetermined the case before he ever heard any of the new evidence in aggravation and mitigation. And the law in Illinois is very clear on predetermination with respect to sentencing. In People v. Kendrick, People v. Morris, People v. Coleman, People v. Zemke, People v. Bolliard. In all of those cases, this Court has said the trial court cannot state what the sentence will be and then move on to sentencing. It has to move on to sentencing with an open mind. And that's what didn't happen here. The Morris case, you're saying the Morris case is factually on point with our case? I believe so, Your Honor. In Morris, it was a 100-year sentence that was imposed initially, right? And the appellate court sent it back because he was a juvenile and asked the court to consider those other factors. And the court made multiple comments about the fact that he wanted to reimpose that same 100-year sentence and did. So how is that similar to our situation? So here we have another sentence that was vacated because it was improperly imposed. 37 years was not possible under the facts of this case. This appellate court made that crystal clear. And prior to sentencing, the trial court said it wanted to impose a maximum 30-year sentence. But counsel, it is a little different if the 100-year sentence was not appropriate in that the court didn't take in account the Miller factors or didn't consider his age in issuing and giving that sentence. It's a little different. The court wasn't saying 37 years was an excessive sentence. 37 years at that point only became an excessive sentence because the defendant, unknown to the court, had been given this ceiling of 30 years. Well, I'll make two points about that. One, in the last appeal, Mr. Hill did argue that 37 years was an excessive sentence. In fact, he even argued that a 30-year sentence, that this court couldn't simply reduce the sentence to 30 years. But this court didn't go with the 37 years, right?  But this court didn't find that it wasn't an excessive sentence either. It simply refused, it declined to consider the excessiveness argument because it was sending it back for resentencing anyway. So it still is an open question whether 37 years would be excessive or not. It was simply a question that this court never reached. In the Miller's case, as I recall, it's been a little bit of time since I've looked at that case in detail, but it wasn't that the sentence couldn't be, a 100-year sentence couldn't be imposed. It was just that it had to be imposed after consideration of the characteristics of youth. And so it went back for that consideration. And the trial court in that case made multiple comments stating that he thought he had considered the youth. And he said that he, he said, I think I said somewhere on the record that this was a young defendant, but here we are. So he was preoccupied with reimposing what could have been a legal sentence, but he had to consider the defendant's youth. And this court found that his comments indicated he was not really interested in resentencing as required by this court. Rather, he was interested in reimposing the original sentence that he had imposed. And I think that's what we do have here. We have the court saying before sentencing, I'm not going below 30. And then we have the court's explanation as to why after sentencing, because he thought his prior 37-year sentence was fair. But even if this case isn't factually on point with Morris, we do have a due process problem, because at its base, this court sent it back for the exercise of discretion. And we have a court saying what it's going to do before it actually has a hearing. And the parties stipulated in this case how the second resentencing hearing was going to go, right? Both parties stipulated to admit the transcripts from the prior sentencing hearing, the PSI from the prior sentencing hearing, and all of that, too. So the parties agreed to how the procedure would take place, right? I would argue that the parties agreed that the court could consider that evidence at the resentencing hearing. Yes, Your Honor. Okay. And the court also gave both parties a chance to present any additional evidence that they so chose and gave the defendant a chance to allocate again because he had it the prior sentencing hearing. That's correct, Your Honor. Okay. So how are the due process rights violated during that second resentencing hearing? Well, what we essentially have is the court saying I'm going to sentence the defendant to 30 years and then holds a hearing in which trial counsel endeavors to change the court's mind. But it has already hardened its position. In fact, the court's language is not ambiguous. He says, and I quote, I told you I am not going to go below 30. Did the court have the authority to issue a 30-year sentence? It did, Your Honor. It was a legal sentence. And so the evidence that an error was created occurred because of the statements that the judge made at the beginning saying I am not going to go beyond, I'm not going to go below, we're not going to go above, but I'm certainly not going to go below 30. That is correct, Your Honor. And I want to qualify my prior statement that the question of whether a 30-year sentence is excessive under these facts is a separate question entirely, but it is within the law of the case and the statutory range for these crimes, 30 years was at least possible. But what we have here is a court saying, in essence, I'm going to do X. And the state acknowledges that the court said this. It doesn't dispute the fact that the trial court gave a clear indication of what the sentence was going to be. The state argues that trial counsel could reasonably go to sentencing trying to move the court off of that number. But this court has never said that the trial court can go into sentencing saying, I'm going to give you prison, convince me to do otherwise, or I'm going to give you the maximum possible sentence unless you show me that I should do otherwise. In fact, the case law on that is quite clear. The court can't do that. And if it does do that, the case has to be remanded for resentencing. So in this case, I think we do have a crystal clear case of predetermination where the trial court tells everybody what's going to happen at the hearing and then follows through on that promise and later explains why it came to that conclusion. The remedy under Morris and other cases cited in the brief is remand for resentencing before a different judge. That's the remedy that we're asking today. Thank you. May it please the court, counsel, Tom Hansel on behalf of the state. In this case, I think the two comments at issue by the court are taken entirely out of context. The comment regarding I'm not going below 30 was made in response to counsel's or defendant's motion to clarify the sentencing range. That motion didn't just seek clarification. It essentially seeked to take the cap of, assuming it's a cap, of 30 years from the mandate and make it 27. So they argued fundamental fairness required each of the counts, if it's consecutive, to be 15 years. One of the counts had already been sentenced to 12 years, so that was capped by the prohibition on increasing a sentence. So they argued that the sentence range, the maximum I should say, should go below 30 and it should go to 27 and that the court should proceed to sentencing with a range in mind of 12 to 27 years. And the court responds, I've told you I'm not going below 30. We had an off-the-record conference about this. I've considered it. Next hearing date, defendant re-proposes this. We believe fundamental fairness requires each of these to be 6 to 15 and count 8 to be capped at 12. Court says, what I'm willing to say, I don't like the way you do it. He's subject up to the maximum he can get is 30 years, but each one is 6 to 30, so we will figure that out. The sentencing range is 6 to 30 on each count consecutive, but the total can't go above 30 years the way I understand the appellate court's ruling. Counsel then responds, with that then, with the court's ruling, we are prepared to proceed to sentencing at this time. The court, given this context, isn't promising what sentence it's going to impose. It's doing exactly what the motion is. It's clarifying the range, and it's stating that the range, the top of the range, is not going below 30. It's staying at 30. The bottom is 12. Let's go to sentencing. They then go to sentencing. Sentencing hearing, as was discussed, considers everything the court's required to do. Defendant doesn't LOQ at the sentencing hearing, but had at the prior sentencing hearing. Court offers him the opportunity to LOQ. He says, no, thank you. Court says, well, I know you LOQ'd it before, so I'll consider that. So even considers mitigation that's not presented favorably for him. Counsel, in your brief, in State's brief, there's some argument that it didn't need to go to a sentencing hearing. Certainly. So that delves into the directive of the mandate. The mandate does not explicitly state, have an entirely new resentencing hearing. It states this sentence should have never exceeded 30 years because of counsel's bad advice and the ineffectiveness that was found at the post-conviction hearing. So it should have never exceeded it. We're sending it back. The sentence should not exceed that. In theory, the court could have simply imposed a 30-year sentence. It's not what happened here, but from the mandate, that may have been the directive, or could be the directive read from it. And I think that finds credence in Whitfield, which was a case relied on in the mandate, which said we reverse the judgment. Well, it's an Illinois Supreme Court case, so given the context of the first sentence. We reverse the judgment of the appellate court, vacate the sentences, and remand to the circuit court with directions that it impose a sentence of 22 years' imprisonment to be followed by three years' MSR. So Whitfield didn't, the way I read it, not a directive, have a whole new resentencing hearing. It's changed the sentence. It was wrong. I believe it was an MSR issue. MSR has to be added. Add it. But that's not this case. No, certainly not. This case was set back for a new sentencing, resentencing, correct? I believe so. I believe that's what the parties viewed it as, and that's why it went to a full sentencing. Because there's some statutory and legal requirements as to what constitutes a sentencing hearing. Absolutely. And I believe those were met here. A PSI was considered. The trial evidence was considered. Aggravation mitigation. Parties were offered an opportunity to argue. The court grappled with all of that. Essentially grappled with all of it through stipulation from everything presented before, and then added evidence. It was kind of like a supplement, almost, to the second sentencing hearing. Considered all the new evidence that was presented. All the new arguments. Came to a reasoned decision. So, Mr. Hansel, you'd say whatever that first comment that the judge is making regarding, this is referencing the off-the-record conference, whatever comments are made can't be taken alone and have to be taken in context of the subsequent hearing or subsequent statements the court makes in the motion to clarify sentence or the other motions prior to the sentencing hearing. Yes. So the motion to clarify sentence, the memo that was offered in support, the off-the-record conference all pertain to a request that ultimately was, take the sentence range, the maximum of it, below 30. And so when the court says, I'm not going below 30, we've talked about this, and counsel refers to it as a ruling, essentially, on his motion that was being re-litigated at that time. The court's ruling on a very specific thing. It's not ruling on what the sentence would be. The court was, I think. Is that to say that he's saying, I'm not going to go below 30, it's 6 to 30 on each of these, not 6 to 15 on each of these? Yes. So it's essentially, well, it became a, it was creative math in the motion to clarify, given like, well, there's two counts and it's sent back for 30 and they have to go consecutive, you split it so each is capped at 15. Obviously, there wasn't support for that proposition, but logically, or mathematically, I see how they reached their conclusion that it should be capped at 27. So the court is clarifying, yeah, these have to go consecutive, now I have this aggregate maximum I'm working with of 30, but I'm not going to, yeah, count 8 is going to be 6 to 12 because I previously imposed 12. And the other count, because it's a split, we'll split them in half, 30, we'll call it 6 to 15, so I'll impose 12 to 27. It's exactly what counsel was asking, and the court said no. And reasonably so, there's no reason that the 30 aggregate had to be split evenly between the two counts. Or there's no reason that the sentence, that the court can still consider the sentence 6 to 30 on each count. Yeah, yeah, it's, I mean, ultimately it still is that, and in terms of admonit, this was brought forth in terms of what should defendant be admonished of. And it, I think, cut to the core of the admonishments of the most you will possibly get here today, when it's all added up and it's all consecutive, is 30. And the lowest you will get is 12. And how that math is going to come forth and whatever number we reach, how that math adds up, that we'll sort out. But we're going to tell you what the maximum you're facing, the minimum you're facing is. And the court said, I'm not, like, parsing into it, and I'm not reducing what the mandate said of 30. I'm not taking it below. So I think that context clarifies it. It's not a promise of what the sentence will be. It's just, it's clarifying the sentence range, as the motion requested. I think the qualms with the appellate mandate, a number of things come up with that. The court. Can I interrupt you for one second on that? Yeah. Your brief argues that the court did not need to have a secondary sentencing hearing. Are you agreeing now that the court did have the secondary sentencing hearing? Yes. Okay. Your argument wasn't necessary, but the court had one. Yes. Exactly. Because the second sentencing hearing was sound. The issue, and this goes into the qualms with the appellate mandate, the issue of fairness there wasn't exactly, how am I weighing aggravation mitigation, how am I doing this? It's addressing the ineffectiveness of counsel. And that's what this court's published opinion clarified, of how that should be addressed, because there was some uncertainty. And the court believed that, based on the U.S. Supreme Court case it discussed, I think it was Leipzig, they could sentence anywhere from what the 402 or the plea offer was to the sentence that was imposed, if the relief it sought was, or it ordered, I should say, was resentencing. And then the court cut the sentence essentially in half, from 75 to 37. So that's fair in the concept, the discussion of fair there is, fair, how do I adapt to this ineffective assistance? And this court said, fair in addressing that ineffective assistance is, you don't go above what the admonishment was, the bad admonishment. Pellant makes the argument that this is on all fours with people being Morris. How do you answer that? I think there's four points where it's entirely different. The Morris case dealt with 100-year sentences imposed on a 16-year-old, de facto life, and so on, and youth was not considered. This was before, I believe it was Reyes came out, in terms of term of years, be a life sentence for the application of Miller. So Morris is a 100-year sentence that was based on bad math, or at least incomplete math. The court hadn't considered everything it needed to consider, particularly the youth sentencing factors. It hadn't considered his youth yet, or at least arguably hadn't. I know the court had qualms with the assertion it didn't, but the court didn't go through the factors one by one, didn't hear evidence right on all those points and elaborate arguments. So 100 years that the court was predisposed to is different than the 37 here, where this court heard all the aggravation mitigates, essentially the same exact hearing. A little slight difference at the end, but heard all of this and had to determine, how do I address ineffective assistance? Because in theory, 75 that Judge Lacey imposed, and has never been challenged as excessive, a trial tax, giving the court anything. 75 was fair, absent the ineffective assistance. So the ineffective assistance requires revisiting the 75, a new sentencing error. So 37 that the court was purportedly predisposed to is much different than the 100 that's missing an entire half of the equation to reach it in Morris. Also here, I believe these comments don't indicate predisposition, but in Morris in particular, the comments were continual. So there were several comments. They were unprompted by the parties. There was a trend established there. Also in Morris, very importantly, the court's comments during the sentencing hearing regarding the youth sentencing factors indicated that it discarded them or didn't really acknowledge them as mitigation. Like, yeah, I forget the exact phrase, but essentially that's a hurdle I have to just jump over here. And then I can impose 100 years. That isn't happening here. This court wasn't, I'm still going to sentence you to 30, and I don't really care about that mitigation. I know I'm supposed to consider it not to concern. That's not the case here. So Morris, I think, is an entirely distinguishable case. This is two comments taken out of context. Another about the public mandate as an aside. I think every trial court, when they impose a sentence, likely believes they did the fair thing or any ruling that they impose should believe that. I don't think a lot of trial judges are thrilled when they get reversed. That doesn't mean they're unfair or somehow are predisposed or going to, like, be biased against the defendant's arguments because they want to stick it to the appellate court. Saying it thought it was fair, of course it did. And, yeah, was it an unnecessary comment? Sure. It didn't really add anything. But it doesn't establish bias. It doesn't establish predisposition or any sort of animosity towards the arguments that were raised. I have one final question. Your argument that the court did not have to even hold a sentencing hearing, was that just in the flourish of argument, or do you believe that when the mandate from the appellate court goes back to hold a resentencing hearing, that it's optional? I certainly don't believe that. I just wanted to clarify. Make sure there's no new policy that's bubbling up that we need to squash now. We fully respect the court's mandates and that that is not the case. More so the point with that was that the mandate as it was written could be read to be like Whitfield, imposed 30, or kind of like a, here's a new range. You've already heard everything. You already fairly weighed it all. But you should never have gone above 30. So fix it, essentially. That's something this court could have done had they wanted to, isn't it? Yes. Could have said we were mandated to impose a sentence of X number of years. Yes. So because we didn't do that, you interpret that to mean there needed to be a new sentencing hearing. Because the court didn't expressly state kind of like Whitfield, impose a sentence of ABC. Right. Yes. I think one could read impose a sentence not to exceed implies that there's a range there. It's not just if it said impose a sentence of 30, that's different than not to exceed, certainly. Could one read not to exceed to mean impose a sentence of 30? Possibly, given Whitfield and all that. But I think that's largely besides the point where the court was not predisposed, had a perfectly fine sentencing hearing, and came to a fair assessment of the facts here, which notably all three times this defendant has been sentenced, one of them is the unbiased Judge Lacey whose 402 should be weighed heavily. Judge Lacey imposed 75 years, extended terms here. Found these to be very serious offenses, very serious background. Of course now he's removed from the mitigation that has developed over time. But Judge Lacey assessed this about 75. Nobody challenged that ever. Judge Lacey in theory, or I guess in practice, rejected 12 to 29. He rejected this lower range. Defendants now are doing 30. I don't know how to put this clearly, I guess. The three courts now have rejected imposing anything less than 30, considering the aggravation, the seriousness of the offense, which is fair given this case. It's a very serious offense. The fact that 30 was this new maximum doesn't somehow mean it has to be a percentage of a maximum or less than the maximum. An offense could still be as serious as a 75-year offense, but sentenced to 30 years given the ineffective assistance. And I think that's largely what occurred here. Very serious offense. 30 years was well considered and issued by an entirely fair sentencing hearing and sentencing court. I can address the forfeiture issues. I don't know if the court needs to address those given the arguments about the inapplicability of Morris and the lack of predisposition. In sum, we believe that the motion to reconsider did not raise judicial bias or predisposition. It was simply a we shouldn't have gotten the maximum because we presented mitigation. The court rejected that. I believe the ineffective assistance of counsel puts forth an interesting concept that you addressed earlier, Your Honor, of counsel had no qualms with these comments of predisposition. Counsel responded with things like, vote with your ruling on our motion to clarify sentencing or sentence range. We'll proceed to sentencing. Never bad eyed. Never moved to substitute judge. And even after any issues for their client, like they may have aggravated the judge by arguing those things, motion to reconsider does not raise those issues. So through counsel's eyes, defendant's own counsel, no issue here. No predisposition, nothing. They also participated in the off-the-record conference that none of us were there for. So I think counsel's perception, the presumption of reasonableness of their assistance is important there. First prong I don't think applies. The evidence was not close, as stated. Judge Lacey imposed 75 years. And second prong I don't think applies because there's no error here. And with that, based on the arguments here and in our brief, we ask this court to affirm the sentence. Assuming you have no further questions. Thank you, counsel. Thank you. Thank you, Your Honors. I share this Court's confusion with the State's position regarding resentencing. But I don't think that's particularly relevant. I will note it states in its brief multiple times that this didn't have to go back for resentencing. And now it concedes that it did. More concerning to me is the State's new position with respect to the comments made before the sentencing hearing occurred. On page 16 of its brief, it wrote, and I quote, The State is changing its position here. And I certainly object to it doing so on the first time at oral argument. I think this Court should hold the State to the decision it took in its briefs. But regardless, I agree that the comments also have to be taken in context. And that means that the State should hold the State to the decision it took in its briefs.  That means the Court said before sentencing it was going to impose a 30-year sentence. It followed through on that after sentencing. And at the motion to reconsider hearing, it was crystal clear as to why it imposed that sentence, because it believed a 37-year sentence was fair. And so the maximum it could impose was 30. That was as close as it could get to the fair sentence it believed it imposed previously, which this Court found unconstitutional. Now, I'll note, I don't think that Judge Lacey's 75-year sentence is really relevant here. He also offered the defendant 20 years after hearing all the facts and circumstances that the State was required to present during a 402 conference and believed that would be fair if the defendant entered a guilty plea. I'll note Judge Gamboni believed the defendant would have entered a guilty plea had he been constitutionally, had he been represented by a constitutionally effective counsel, meaning we wouldn't be here. The defendant would have served a 20-year sentence and would have already been released. But the point is we have argued that even a 37-year sentence is excessive, and this Court has never passed judgment on that. It's an open question and, quite frankly, irrelevant to this particular case because now we're dealing with a 30-year sentence. And you're not arguing the 30-year sentence is excessive either. This argument solely is that he, his due process rights were violated and the Court abuses discretion in predetermining, is your argument, what his sentence would be. It's a three-prong argument, Your Honor. The argument is that the sentence did not adequately consider the factors of mitigation. It didn't adequately – the judge didn't adequately consider the entire sentencing range, and the judge didn't do those two things because he had come to a decision before the sentencing hearing ever occurred. And if the judge did come to a sentencing decision before the sentencing hearing occurred, he couldn't have adequately considered the factors of mitigation or the sentencing range. So it is, in fact, all three points, but it all really comes back to whether the judge predetermined the defendant's sentence. Does the fact that the Supreme Court accepted the PLA in the Morris case impact your argument as to the applicability of Morris? I don't believe it does. That's still the published law from this Court, and I think until the Supreme Court says otherwise, Morris is still valid. I don't believe that the Supreme Court is going to reverse this Court either. So in conclusion, we argue this was simply not a fair sentencing hearing. Mr. Hill had a right to be resentenced before a judge who would keep an open mind, who'd consider the entire sentencing range, and who'd weigh all of the evidence. And Judge Gamboni simply did not do that. He decided before resentencing he'd impose the maximum possible penalty because he thought his prior 37-year sentence was fair. He didn't like that it had been reversed. This Court should remedy the error by vacating the resulting sentence and remanding the matter for a new resentencing hearing before a different judge. Thank you, counsel. Thank you, Your Honors. We'll take the matter under advisement and issue an opinion in due course.